**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **TERRANCE WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-2599-STA-dkv** |
| | ) | |
| **DSC LOGISTICS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____

Before the Court is Defendant DSC Logistics' Motion for Summary Judgment (D.E. # 14) filed on March 16, 2009. Following the Court's order directing him to respond to the Motion, Plaintiff, who is acting pro se, filed a response on November 10, 2009. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Due to Plaintiff's failure to file a numbered response to Defendant's Statement of Undisputed Facts, the following facts are not in dispute for purposes of this Motion.[1] Defendant DSC Logistics is a supply chain management company in the business of warehousing and

---

[1] Local Rule of Court 7.2(d)(3) states

In addition to citing appropriate legal authorities, the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied. . . shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

transportation services.  Def.'s Statement of Undisputed Facts ¶ 1.  During the time period relevant to Plaintiff's Complaint, Defendant had a facility located in Memphis, Tennessee, which provided third-party logistics services.  *Id*. at ¶ 2.  The Memphis facility opened in May 2005 and served only one customer, the J.M. Smucker Company.  *Id*. at ¶ 3.  At the time the facility was opened, the facility manager position was not posted.  *Id*. at ¶ 4.  Cindy Cler ("Cler"), who was employed as the facility manager in Jackson, Tennessee, and classified as Logistics Manager II ("LM II"), was selected for the position of facility manager in Memphis.  *Id*. at ¶ 5.

Plaintiff was hired by Defendant for the position of Logistics Manager I ("LM I") at the Memphis facility, effective October 10, 2005.  *Id*. at ¶ 6.  Cler was Plaintiff's supervisor from the time of his hire on October 10, 2005, to May 2006.  *Id*. at ¶ 7.  Salary ranges at DSC Logistics are based upon the experience and qualifications required for the particular position and may vary from region to region.  *Id*. at ¶ 8.  Factors including education, experience, market conditions, and the candidate's current salary are considered when determining what the starting salary for a new hire will be.  *Id*. at ¶ 9.  The minimum starting salary for an LM I level manager is generally $38,000 annually.  *Id*. at ¶ 10.  Plaintiff's starting salary as an LM I was $43,000 annually.  *Id*. at ¶ 11.

Plaintiff does not have any factual support for his allegation that any pay differentials at the facility were based upon race.  *Id*. at ¶ 12.  During the time period relevant to Plaintiff"s Complaint, the person receiving the highest salary in the position of LM I at the Memphis facility was an African-American male, Steven Burress.  *Id*. at ¶ 13.  Burress, who was hired by DSC Logistics on May 2, 2005, received a starting salary of $47,000 annually, which was increased to $48,292.50 annually in 2006.  *Id*. at ¶ 14.

2

While at DSC Logistics, Plaintiff received a performance evaluation in March 2006.  *Id.* at ¶ 15.  In Plaintiff's performance review, his supervisor criticized Plaintiff, indicating he "needed to rely less on your shift lead to be on top of the operation."  *Id.* at ¶ 16.  Plaintiff's supervisor also indicated that Plaintiff "needs to take ownership of the quality of the work output of his shift."  *Id.* at ¶ 17.  Plaintiff voluntarily resigned his position with DSC Logistics on or about September 8, 2006.  *Id.* at ¶ 18.

During Cler's tenure, the position of facility manager was designated as an LM II at the Memphis facility.  *Id.* at ¶ 19.  However, the facility was experiencing significant quality and productivity issues during that time period.  *Id.* at ¶ 20.  Plaintiff concurred that Defendant was struggling with quality and productivity issues at the Memphis facility during the period of October 2005 to May 2006.  *Id.* at ¶ 21.  Those issues were impacting the facility's sole client, the J.M. Smucker Company.  *Id.* at ¶ 22.  Corporate management was concerned that the client would take its business elsewhere.  *Id.* at ¶ 23.  Due to these continuing issues with quality and production at the Memphis facility, and the adverse impact on the facility's only client, the decision was made to terminate Cler's employment as the facility manager.  *Id.* at ¶ 24.

Senior corporate management determined that the new facility manager needed to possess additional qualifications in order to effectuate the necessary changes to improve quality and productivity at the facility.  *Id.* at ¶ 25.  Therefore, the position of Memphis facility manager was elevated to Logistics Manager III ("LM III") in May 2006.  *Id.* at ¶ 26.  The minimum qualifications for an LM III are as follows: (1) a bachelors degree in Logistics, Supply Chain Management, Business, or a related field; (2) six to eight years experience in a high volume logistics center or transportation role; (3) a minimum of six years of managerial experience in a

high volume distribution center; (4) a knowledge of distribution in shipping, receiving, order filling, and inventory control; (5) experience in projecting labor needs, budgeting, and maintaining a safe environment for products and employees; (6) a customer focus with strong customer interaction capabilities; (7) strong planning, organizational communications, and interpersonal skills; and (8) warehouse management systems (WMS) experience. *Id*. at ¶ 27.  It was determined that no existing personnel at the Memphis facility would be able to take on the responsibilities of facility manager, particularly given that those employees were part of the team that had been responsible for quality and productivity issues at the facility. *Id*. at ¶ 28. Likewise, the facility manager in Jackson, Daniel Harms (an LM II level manager) a white male, was also deemed not prepared to handle the additional responsibilities of the position in Memphis. *Id*. at ¶ 29.

DSC Logistics hired an individual outside the company, James Barnes, to be facility manager in the upgraded position. *Id*. at ¶ 30.  DSC Logistics utilizes an outside consulting firm, Reed Organization, to conduct interviews of candidates for the position of facility manager and higher. *Id*. at ¶ 31.  Reed Organization interviewed James Barnes and recommended that DSC Logistics hire Barnes for the position of facility manager in Memphis. *Id*. at ¶ 32.  Vice Presidents Cheryl Tibus, Michael Riley, and Michael Weinstock made the final determination to hire James Barnes for the facility manager position. *Id*. at ¶ 33.  James Barnes exceeded the minimum criteria for the position of LM III. *Id*. at ¶ 34.  The DSC Logistics facility in Memphis was a 200,000 square foot facility with 40 employees and 4 direct management reports. *Id*. at ¶ 35.  Prior to his hire, James Barnes had served as Distribution Center Operations Manager of a 400,000 square foot facility with 100 employees and 7 direct management reports. *Id*. at ¶ 36.

In its Motion for Summary Judgment, Defendant argues that Plaintiff cannot make out a prima facie case of race discrimination for failure to promote because he cannot show that he was qualified for the position or had similar qualifications to the person selected. Defendant does not dispute that Plaintiff is a member of protected class or that the position for which Plaintiff claims he was passed over was not posted. At the time when Defendant decided to terminate Cler, Defendant also decided to seek a new manager who would meet the qualifications for LM III. Plaintiff had only been employed at the Memphis facility at the LM I level for seven months. Defendant also argues that as one of the facility's managers under Cler, Plaintiff was also responsible in part for the undisputed underperformance of the operations. As for Barnes, the individual Defendant hired to manage the Memphis facility, Barnes had experience managing a distribution center twice as large as Defendant's facility. Therefore, Plaintiff cannot show that he was qualified or even that he was equally qualified for hire as the facility manager.

Even if Plaintiff could make out a prima facie case, Plaintiff cannot demonstrate that Defendant's legitimate reason for hiring Barnes, its concern to improve the operation of the Memphis facility, was a pretext for discrimination. The overall concerns about satisfying the single customer of the Memphis facility, Plaintiff's short tenure at the LM I level, and some shortcoming referenced in his evaluations led Defendant to reasonably believe that it needed to hire outside of the Memphis area for its new facility manager. As to Plaintiff's claim of unequal pay, Defendant contends that Plaintiff has no proof to support his claim. On the contrary, the record indicates that the highest paid person in the LM I level at the Memphis facility was an African-American male like Plaintiff.

5

In response Plaintiff has filed a short brief as well as some documents which were apparently obtained during discovery.  First, Plaintiff argues that Defendant discriminated against him by not paying him as much as another LM I, Charles McMillan, who was also a shift manager.  According to Plaintiff, McMillan a white male, had less experience and less responsibility than Plaintiff but received more compensation.  Plaintiff further argues that Defendant failed to properly post the job opening for facility manager and denied him the opportunity to apply on account of his race.  Plaintiff contends that the evaluation cited by Defendant does not support Defendant's assertion that Plaintiff's review was negative.  Plaintiff claims that he actually received a raise after the evaluation.  Finally, Plaintiff asserts that he possessed all of the qualifications for the LM III position including experience managing multiple facilities, which Barnes did not have.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

--------

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

## ANALYSIS

I.      **Failure to Promote**

A plaintiff alleging employment discrimination can present either direct or circumstantial evidence of discrimination.[12]  Absent direct evidence of discrimination, a plaintiff must show: (1) he is a member of a protected class, (2) he applied for and was qualified for the position, (3) he was considered for and denied the position, and (4) the position was given to an employee with similar qualifications who was not a member of the protected class.[13]  The parties do not dispute that Plaintiff is a member of a protected class or that he was denied the position.  Defendant, however, argues that Plaintiff cannot show that he was qualified for the position or that the position was given to an employee with similar qualifications who was not a member of the protected class.[14]

With respect to the second prong of Plaintiff's case, Plaintiff must establish that he was qualified for the position.  This means that the Court must conduct an independent analysis of Plaintiff's qualifications.[15]  Plaintiff must show that he "was meeting the employer's legitimate

---

[12] *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2008).

[13] *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).

[14] In this case Plaintiff need not prove that he applied for the position because it is undisputed that Defendant did not post the job opening.  Therefore, the Court holds that Defendant had a "duty to consider all those who might reasonably be interested in a promotion were its availability made generally known." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).

[15] *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 242 (6th Cir. 2005) (citations omitted).

8

expectations and was performing to the employer's satisfaction."[16]  Additionally, the"court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge . . . [and] be careful not to conflate the distinct stages of the *McDonnell Douglas* test."[17]  Defendant has argued that Plaintiff was not meeting expectations and cites a performance appraisal of Plaintiff's work.  In that appraisal, Plaintiff's manager wrote that Plaintiff "needed to rely less on your shift lead to be on top of the operation" and "needs to take ownership of the quality of the work output of his shift."  However, the Court finds that the appraisal contains a significant number of positive remarks about Plaintiff's performance as well.  Perhaps most importantly, Plaintiff's manager assigned Plaintiff a performance rating of "T", which indicated "Too New to Evaluate - This category should be used for employees with six months of less in their current position."  As a result, the evaluation does not demonstrate that Plaintiff was not "was meeting the employer's legitimate expectations" or was not "performing to the employer's satisfaction."

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff cannot adduce evidence to satisfy the second prong.  It is not disputed that Defendant sought an individual with qualifications equal to the position of LM III within Defendant's organization. The record shows that the minimum qualifications for an LM III were as follows: (1) a bachelors degree in Logistics, Supply Chain Management, Business, or a related field; (2) six to eight years experience in a high volume logistics center or transportation role; (3) a minimum of six years of managerial experience in a high volume distribution center; (4) a knowledge of distribution in

---

[16] *Dews*, 231 F.3d at 1022.

[17] *White*, 429 F.3d at 242.

shipping, receiving, order filling, and inventory control; (5) experience in projecting labor needs, budgeting, and maintaining a safe environment for products and employees; (6) a customer focus with strong customer interaction capabilities; (7) strong planning, organizational communications, and interpersonal skills; (8) and warehouse management systems (WMS) experience.

The Court holds that Plaintiff did not meet the listed qualifications for the LM III position, particularly the prior experience in management.  Upon examination of Plaintiff's resume, Plaintiff holds a bachelors degree in Transportation and Logistics.  Plaintiff had worked for United Parcel Service ("UPS") in several capacities from 1989 to 2005 and completed the UPS Manager's Leadership School and Supervisor's Leadership School.  During his tenure at UPS, Plaintiff worked in management for four years, as a Hub Manager from 2001 to 2003 and then as a Business Manager from 2003 to 2005.  While it is true that Plaintiff worked as a manager for UPS, it is not clear from his resume that Plaintiff was working in a high volume distribution environment such as Defendant's Memphis facility.  Nevertheless, it is clear that Plaintiff did not possess the six to eight years of management experience in a high volume distribution center required for the LM III position.  As for the remaining qualifications of the LM III position, the Court finds that Plaintiff was otherwise qualified based on his experience working with UPS.  Due to Plaintiff's lack of relevant management experience, the Court holds that Plaintiff has failed to adduce evidence that he was qualified for the LM III position.

Likewise, the Court also holds that Plaintiff cannot make out the fourth prong of his case.  "[I]n order to satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that []he and the non-protected person who ultimately

was hired for the desired position had similar qualifications."[18]  The Court then must conduct an independent review of the relative qualifications of the plaintiff and the person who ultimately received the job.  It is undisputed that Defendant hired James Barnes as the new facility manager in 2006.  Having already reviewed Plaintiff's qualifications for the position, the Court finds that Barnes was more qualified than Plaintiff for the LM III position.  While both men met most of the qualifications for the LM III position, Barnes had more managerial experience than Plaintiff, including more than thirteen years in distribution management.  Barnes was Distribution Services Manager at Thomas & Betts Corp. from 1993 to 2000, responsible for warehouse management systems, facility design, and inventory management repairs.  From 2000 to 2004, Barnes was Operations Manager at Standard Corporation - Integrated Logistics.  Before being hired by Defendant, Barnes had been the Distribution Center Operations Manager at Phillips Lighting Co. since 2004, supervising a 400,000 square-foot facility, a staff of over 100 employees, and seven manager reports.  While it is true that Plaintiff also had management experience in distribution and logistics, the Court holds that Plaintiff cannot show that he had similar qualifications to Barnes.

Even if Plaintiff had been able to satisfy his prima facie burden, his claim still fails because Defendant has articulated a legitimate non-discriminatory reason for failing to hire Plaintiff as facility manager. Once the plaintiff meets her prima facie burden, the burden then shifts to the employer to produce a legitimate non-discriminatory reason for failing to hire the plaintiff for the position sought.[19]  Defendant argues that it made the judgment that none of the

---

[18] *Id*.

[19] *Id*. at 244.

LM I level managers at the Memphis facility such as Plaintiff were qualified to become facility manager.  As the Court has already noted, Barnes had demonstrably more management experience and was coming to Defendant's Memphis facility from a previous job where he was managing a distribution center twice as large as Defendant's facility.  The Sixth Circuit has held that an employer's determination that a candidate from a non-protected class was simply the most qualified candidate is sufficient to satisfy the burden to produce a legitimate, non-discriminatory reason for deciding not to hire a plaintiff in a protected class.[20]  Defendant also cited the fact that in its business judgment, the Memphis facility was not being well-managed, and Plaintiff was part of the existing management team.  For that reason, Defendant made the decision to hire a new manager from outside the company.  Based on these factors, Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for not hiring Plaintiff.

Once Defendant has produced a legally sufficient reason for failing to hire Plaintiff, the burden shifts back to Plaintiff to show that the nondiscriminatory reason was pretext for discrimination.[21]  A plaintiff can make this showing in one of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct, or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct.[22]  Even if Plaintiff had established his prima facie case, Plaintiff has failed to adduce any evidence to rebut Defendant's legitimate reason for its decision not to hire Plaintiff.  Plaintiff has failed to show that the proffered reason had no basis in fact or that it

[20] *Id*. at 245.

[21] *Id*. (citing *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir.2003)).

[22] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir.2003).

did not actually motivate the employer's conduct or that the proffered reason was insufficient to warrant the challenged conduct.  Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of failure to hire.

II.     **Equal Pay**

Title VII prohibits an employer from discriminating against any individual with respect to his compensation on the basis of race.[23]  However, an employer may lawfully apply different standards of compensation for non-racial factors.[24]  To establish a claim for unequal pay pursuant to Title VII, an employee must show that the employer pays different wages for jobs requiring equal skill, effort, and responsibility, and under similar working conditions.[25]  It is undisputed that Plaintiff earned a starting salary in 2005 of $43,000.00 and received a pay increase in 2006 to $44,290.00.  Plaintiff has identified Charles McMillan, another LM I level manager at Defendant's Memphis facility, as a comparator employee.  According to the record, McMillan was paid a starting salary of $47,000.00 when he was first hired in 2006.  Defendant argues that Plaintiff cannot make out this claim because another LM I manager at the Memphis facility, Steven Burress, an African-American male, was the highest paid LM I in Memphis earning a starting salary of $47,000.00, and receiving a raise to $48,292.50 in 2006.  Although Plaintiff does not dispute Burress's salary, the Court finds that Burress' salary is irrelevant to its analysis of Plaintiff's equal pay claim.  The relevant inquiry is whether McMillan was paid more than

---

[23] 42 U.S.C. § 2000e-2(a)(1).

[24] 42 U.S.C. § 2000e-2(h).

[25] *Odomes v. Nucare, Inc*., 653 F.2d 246, 250 (6th Cir. 1981).

Plaintiff for performing a job requiring equal skill, effort, and responsibility, and under similar working conditions as Plaintiff's job.

The Court holds that Plaintiff has failed to come forward with evidence to make this showing.  According to Plaintiff's brief, McMillan had fewer employees and therefore fewer responsibilities as an LM I than Plaintiff.  Plaintiff has produced McMillan's resume and job application, which the Court finds supports Plaintiff's assertion that McMillan had less experience than Plaintiff.  However, there is no evidence in the record to support Plaintiff's contention that he had the same job duties or more responsibilities than McMillan did.  Plaintiff has not provided any testimony or documentary proof such as a job description, performance evaluation, or any other evidence concerning McMillan's job.  More specifically, there is nothing in the record before the Court to indicate what level of effort, skill, or responsibility McMillan's job entailed.  At the summary judgment stage, Plaintiff has the burden to come forward with some evidence to show that there are factual disputes which would preclude summary judgment in favor of Defendant.  Plaintiff has failed to do so as to this claim. Therefore, Defendant is entitled to summary judgment on this claim.


## CONCLUSION

Having concluded that Plaintiff cannot make out his prima facie case of discrimination for failure to promote or for unequal pay, Defendant's Motion for Summary Judgment is **GRANTED**.


**IT IS SO ORDERED**.

14

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 1st, 2009.